UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

|  |  |
|---|---|
| KEVIN L. HUGHBANKS,<br><br>      Plaintiff,<br><br>    vs.<br><br>ROBERT DOOLEY, Warden, Mike<br>Durfee State Prison; TIM REISCH,<br>Cabinet Secretary, SD DOC;<br>SUSAN JACOBS, Associate<br>Warden, Mike Durfee State Prison;<br>TAMI DEJONG, Unit Coordinator,<br>Mike Durfee State Prison; RANDY<br>STEVENS, Sco. Property Officer,<br>Mike Durfee State Prison; and<br>NICOLE ST. PIERRE, Sco. Property<br>Officer, Mike Durfee State Prison,<br><br>      Defendants. | Civ. 10-4064-KES<br><br><br>.ORDER DENYING INJUNCTIVE<br>RELIEF |

Plaintiff, Kevin. L Hughbanks, an inmate at Mike Durfee State Prison, filed this civil rights action arguing that his mail was improperly rejected. Hughbanks now moves for several preliminary injunctions. He seeks the return of a number of suggestive photographs; an order directing defendants to allow him to utilize the administrative remedy process; an order that defendants provide Hughbanks with free legal copies for all matters relating to his case; and finally an order directing defendants to cease retaliating against him. Docket 26, 29, 31. Hughbanks also moves to withdraw his motion for an ex parte injunction (Docket 9) in part, to remove anything that

could result in his relocation. Docket 27. Hughbanks also seeks the appointment of counsel. Docket 28.

**DISCUSSION**

## I.   Elements

"The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). Whether a preliminary injunction should issue is decided by weighing four factors (the "*Dataphase*" factors). They are:  (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on the other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Systems v. C L Systems*, 640 F.2d 109, 114 (8th Cir. 1981). In the prison setting, a request for  a preliminary injunction "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff*, 60 F.3d at 520.

### A.   Photographs

Hughbanks argues the confiscation of a number of sexually suggestive photographs violated his constitutional rights. He asserts the photographs were not prohibited by the DOC pornography policy because they did not depict nudity and would not be considered sexually suggestive under its definitions. The DOC pornography policy defines nudity as "a pictorial or

2

other graphic depiction where male or female genitalia or female breasts are exposed." Docket 34-8. Sexually explicit material "includes written and pictorial depiction of actual or simulated sexual acts including but not limited to sexual intercourse, oral sex, or masturbation." *Id.* It also "includes individual pictures, photographs, or drawings of nudity or sexually explicit conduct that are not part of a book, pamphlet, magazine, periodical or other publication." *Id.* Defendants have produced the rejected photographs as an exhibit. See Docket 34-4. It appears that the photographs do not fall within the pornography policy. But according to defendants, that is not why the photographs were confiscated.

Defendants argue the photographs were rejected because they were considered detrimental to Hughbanks's rehabilitation as a sex offender. Because Hughbanks was convicted of third-degree rape and possession of child pornography, he received a psychosexual evaluation upon his incarceration. Docket 34-2. It was recommended that Hughbanks receive sex offender treatment through the Special Treatment of Perpetrators Program (STOP) and the Sex Offender Management Program (SOMP). *Id.* Hughbanks's psychosexual evaluation states that he should not be allowed any use or exposure to pornography or erotica or access to the internet. *Id.* The treatment coordinator recommended that any explicit photographs in Hughbanks's possession be confiscated. Docket 34-3. Prison staff followed

this recommendation, confiscating some erotic photographs and rejecting others that were mailed to him. Certain publications containing erotic photographs were also rejected. The mailroom rejection notice provides that mail may be confiscated if it is considered detrimental to an offender's rehabilitation. Docket 34-2.

Hughbanks seeks that this court issue several orders in connection with the photographs. First, Hughbanks asks this court to order defendants to return the photographs. Docket 26. Second, he seeks an injunction "restraining defendants from censoring, confiscating, or rejecting any item mailed to plaintiff in the past, present, or future that defendants allege to be detrimental to plaintiff's rehabilitation without having a qualified behavioral psychologist review each item." *Id.* Hughbanks also asks this court to enjoin defendants from "censoring, confiscating or rejecting any item mailed to plaintiff in the past, present, or future that defendants allege may cause plaintiff to reoffend without having a qualified behavioral psychologist review the item(s) in question, after being provided with the circumstances of plaintiff's felony convictions, what led defendants to believe the questioned items could be detrimental to plaintiff's rehabilitation, and how the Defendants believe the item could cause plaintiff to reoffend." *Id.* Finally, if the court grants the two injunctions relating to evaluation by a behavioral

psychologist, Hughbanks also seeks a copy of the report or findings of the psychologist and a list of the psychologist's credentials. *Id.*

### 1. Threat of Irreparable Harm

In order to demonstrate irreparable harm, Hughbanks must show that the harm is "certain, great and of such imminence that there is a clear and present need for equitable relief." *Packard Elevator v. Interstate Commerce Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986). Hughbanks argues that the confiscation and rejection of the suggestive photographs violated his First Amendment rights. If he is correct and his First Amendment rights have been violated, this constitutes irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). *See Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140-41 (8th Cir. 1996) (finding the threat of irreparable harm requirement satisfied where movants alleged their exclusion from a particular public television program violated their First Amendment rights). Thus, Hughbanks has satisfied this element of the *Dataphase* inquiry.

### 2. Balance between Harm and Injury to Other Parties

The second factor to consider is the balance of the threat of harm against the harm that will occur to other litigants. *Dataphase*, 640 F.2d at 113. There is a tension between the need to protect constitutional rights and

the longstanding policy of judicial restraint regarding issues of prison administration. "Traditionally, federal courts have adopted a broad hands-off attitude towards problems of prison administration." *Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir. 1996). It is not the role of federal courts to micro-manage state prisons. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995). Conversely, "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment . . . such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483 (1995). If the injunctions Hughbanks seeks were issued, the prison would be required to employ a behavioral psychologist to evaluate any rejected photographs with Hughbanks's unique characteristics in mind. Every time Hughbanks orders or is mailed photographs that are rejected, the psychologist would be required to provide him with a report describing how the photographs would undermine his rehabilitation. Such relief would be unduly burdensome on prison officials. Hughbanks seeks special treatment, which, as defendants point out, is always a concern for prison officials tasked with the "unenviable task of keeping dangerous men in safe custody[.]" *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). These concerns outweigh any injury Hughbanks will suffer if the court fails to issue an injunction.

### 3. Likelihood of Success on the Merits

"In a First Amendment case . . . the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). If Hughbanks were in his home, rather than incarcerated as a sex offender in Mike Durfee State Prison, he would have an undisputed First Amendment right to the possession of the photographs. *See Stanley v. Georgia*, 394 U.S. 557 (1969) (holding that the First Amendment protects the possession of obscene material in the home). But his incarceration alters the analysis.

"In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Leonard v. Nix*, 55 F.3d 370, 374 (8th Cir. 1995). These limitations "arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). At least one court has found a sex offender has no First Amendment right to possess sexually suggestive materials that could be detrimental to his rehabilitation. *See Frazier v. Ortiz*, No. 07-cv-02131, 2010 WL 924254 at *12 (D. Colo. March 10, 2010).

Rehabilitating offenders is a "paramount objective of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). Evaluating an offender's rehabilitation, and what may be detrimental to it, is "committed to the considered judgment of prison administrators[.]" *Fegans v. Norris*, 537 F.3d 897, 902 (8th Cir. 2008) (internal citations omitted). Thus, courts apply a deferential rational relationship test to prison officials' application of a policy to an inmate. A prison official's action that "impinges on inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The four factors of the *Turner* test examine (1) whether a valid, rational connection exists between the prison action and the government interest it protects; (2) whether prisoners have an alternative means of exercising the protected right; (3) the impact of accommodating the right on other inmates, guards, and the allocation of prisoner resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Id.* at 89-90.

First, this court evaluates whether a valid, rational connection exists between prison officials' action and the government interest it protects. *Id.* Here, Hughbanks underwent a psychosexual evaluation upon his incarceration. His evaluation recommended that he not be permitted to access pornography, erotica, or the internet. In accordance with that

recommendation, prison officials confiscated sexually suggestive, erotic photographs of women that Hughbanks had in his possession. They also rejected similar photographs that Hughbanks ordered, noting on the mailroom rejection notice that they were rejected because they were "detrimental [to Hughbanks's] rehabilitation." Docket 34-4. Hughbanks disputes this finding. Hughbanks asserts that the confiscation of sexually suggestive photographs of adults actually hinders his rehabilitation as a sex offender. He argues:

> [T]he logic of denying a person from viewing photos of adults that could stimulate and arouse that person when said person has problematic attractions toward children seems counterproductive and in itself detrimental to rehabilitation because the institution is applying negative consequences for trying to view pictures of adults. In a sense, the logical conclusion that one would come to is that Defendants do not want me to have sexual fantasies of adults.

Docket 41 at 12. The conclusion that the photographs would be detrimental to Hughbanks's rehabilitation is "committed to the considered judgment of prison administrators[.]" *Fegan*, 537 F.3d at 902. This court will not disturb that determination.

Due to such concerns, the prison has a specific sex-offender restrictions policy. Docket 34-7. Under that policy, the warden may prohibit any sex offender from possessing any specific items of personal property. *Id.* Such property includes sexually graphic photos that are considered detrimental to the sex offender's rehabilitation, even those that do not fall

9

within the South Dakota Department of Corrections' policy prohibiting pornography. Given Hughbanks's psychosexual evaluation, the application of these policies to Hughbanks is rationally related to the government interest in furthering his rehabilitation as a sex offender. *See Wickner v. McComb*, No. 09-1219, 2010 WL 3396918 at *6 (D. Minn. July 23, 2010) ("[P]rison officials were reasonable in thinking that denying Plaintiff access to the photographs in issue would advance the legitimate penological interests in maintaining prison security, rehabilitating sex offenders, and reducing sexual harassment of prison guards.); *Hunsaker v. Jimerson,* No. 08-cv-01479, 2010 WL 3323415 at *5-6 (D. Colo. July 9, 2010) (holding inmate had not demonstrated likelihood of success on the merits on his claim that prison improperly censored his mail preventing him from receiving publications with nudity); *Frink v. Arnold*, 842 F. Supp. 1184, 1191 (S.D. Iowa 1994) ("[Prison officials] have established a rational connection between the restriction at issue in this case [ban on sexually graphic written materials] and the governmental interest in rehabilitating sex offenders[.]")

The second factor examines whether Hughbanks has an alternative means of exercising the protected right. *Turner*, 482 U.S. at 89. This factor is satisfied, if as here, the application of the policy allows a broad range of materials to be sent, received, and read. *Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989).

Next, the court must assess the impact of accommodating the right on other inmates, guards, and the allocation of prison resources generally. *Turner*, 482 U.S. at 89. If Hughbanks were permitted to possess sexually suggestive photographs, which are contrary to his rehabilitative goals, other sex offenders in the prison would seek the same accommodation. Rehabilitative efforts would be frustrated at an institutional level. Accommodation would come at the expense of rehabilitation. Moreoever, the relief Hughbanks seeks is overly broad and would negatively impact the allocation of prisoner resources.

The final factor is whether whether alternatives exist that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-90. Hughbanks has not put forth any alternatives to the policy and its application. The policies he suggests in his motions would be more burdensome than the current application of the policy. In fact, under the Prisoner Litigation Reform Act (PLRA), this court could not order the relief Hughbanks seeks. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Requiring the prison to employ a behavioral psychologist to evaluate every rejected photograph with Hughbanks's specific characteristics in mind would hardly be the least intrusive means necessary. Thus, there are no alternatives that would fully accommodate Hughbanks's rights without undermining legitimate penological objectives. It is unlikely that Hughbanks would be able to prevail on the merits of his claim.

### 4. Public Interest

The final *Dataphase* factor is whether the public interest would be served by issuing an injunction. *Dataphase*, 640 F.2d at 113. "[T]he determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to protect constitutional rights." *Phelps-Roper*, 545 F.3d at 690. Hughbanks has failed to demonstrate a likelihood of success on the merits of his First Amendment claim. This fact, coupled with the public policy of deferring to prison officials in matters of prison administration, demonstrates that the public interest would not be served if this court issued the injunctions Hughbanks seeks. Accordingly, Hughbanks's motion for preliminary injunction is denied.

**B.   Free Copies**

Hughbanks also seeks an injunction requiring defendants to provide him with free legal copies for all matters relating to his case. Docket 29. Defendants oppose the issuance of an injunction.

**1.   Threat of Irreparable Harm**

The first *Dataphase* factor is the threat of irreparable harm to the movant if the injunction does not issue. 640 F.2d at 113. Hughbanks does not specify how he will be harmed if the requested injunction does not issue. He has not stated that he will miss a procedural deadline, that he has missed a deadline, or that his case has or will be impacted in any way if the court denies his motion. In fact, his filings with this court suggest the opposite conclusion. "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]" *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). At the most, Hughbanks argues that his case may be impacted by having to pay for legal copies and wait for prison legal staff to Shepardize cases. "Possible or speculative harm is not enough." *Northland Ins. Co. v. Blaylock*, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000). Accordingly, Hughbanks has not made the requisite showing.

## 2. Balance of Harm and Injury to Other Parties

The second factor is the balance of the harm to the movant if the injunction does not issue and the harm to the other litigants if the injunction were to issue. *Dataphase*, 640 F.2d at 113. Hughbanks has failed to demonstrate a threat of irreparable harm. But if the injunction were to issue, defendants would be harmed. Defendants argue they would be required to deviate from the indigent inmate policy, creating other concerns at the prison. If this injunction were granted, it is likely that other inmates with legal claims pending will seek exemptions from the policy as well, which could pose a substantial burden on prison resources. Under this policy, indigent inmates are allowed to make photocopies up to but not exceeding ten dollars a month. Docket 34-12. If an indigent inmate has already used his monthly allotment of legal copies and has a deadline that requires additional copies, the indigent inmate may request additional copies. *Id.* Hughbanks argues that he is not indigent. But rather than advancing his claim, this argument undercuts it. Docket 41. Because Hughbanks can afford to pay for his own legal copies, his argument that defendants should provide him with unlimited free legal copies is even less compelling. Given that Hughbanks has not shown a threat of irreparable harm, the harm in requiring defendants to make an exception from an established prison policy weighs in favor of defendants.

### 3. Likelihood of Success on the Merits

Hughbanks must also demonstrate a likelihood of success on the merits in order to receive the injunction he seeks. *Dataphase*, 640 F.2d at 113. If Hughbanks brought a freestanding challenge to the policy, he would be unlikely to prevail. This district court upheld a similar policy against an access to the courts challenge in *Cody v. Slykhuis*, No. 04-4169, 2006 WL 759683 (D.S.D. March 23, 2006). In that case, the court noted that inmates are not entitled to unlimited free photocopies. *Id.* at *2. Nor are inmates constitutionally entitled to unlimited free postage. *Blaise v. Fenn*, 48 F.3d 337 (8th Cir. 1995). *See also Vega v. United States of America*, No. 05-3232, 2006 WL 1445220 (W.D. Mo. May 23, 2006) (finding there is no constitutional right to free postage or free photocopies for inmates). Moreover, in order to prevail on an access to the courts claim, an inmate must demonstrate that he sustained an "actual injury" as a result of the challenged policy. *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001). More specifically, Hughbanks would be required to show that a valid, non-frivolous legal claim was frustrated or impeded. *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998). Given that the challenged policy contains an exception for an inmate with a filing deadline, Hughbanks is unlikely to be able to make this showing. Accordingly, Hughbanks has failed to demonstrate a likelihood of success on the merits.

### 4. Public Interest

The final *Dataphase* factor examines whether the public interest is furthered by the issuance of an injunction. *Dataphase*, 640 F.2d at 113. The public's interest in the orderly administration of prisons and the conservation of prison resources is furthered if the court declines to interfere in the day-to-day running of the prison. While the public has a general interest in the enforcement of constitutional rights, it is overcome by the countervailing interest in efficient management of the prisons. *See Wycoff v. Nix*, 975 F.2d 867 (8th Cir. 1992) (affirming denial of injunction where public interest in efficient prison administration outweighed general interest in constitutional rights and prisoner had shown no injury). Finally, the court is mindful of the Eighth Circuit's admonition that judicial restraint is especially warranted in actions for injunctive relief against prison officials. *Goff*, 60 F.3d at 520. Hughbanks has not demonstrated that issuing the injunction is in the public interest. The *Dataphase* factors weigh against granting the requested relief. Accordingly, Hughbanks's motion for a injunction ordering defendants to provide him with free legal copies is denied.

### C. Suspension of Administrative Remedy Process

Hughbanks also seeks an injunction ordering defendants to "restore Plaintiff's Administrative Remedy process and attempt to resolve his grievances at all levels of the Administrative Remedy process." Docket 26. He

also asks the court to order that: the defendants "not to try to avoid resolving" issues by restricting his access to the administrative remedy process; that defendants "advise and work with Plaintiff if unclear as to what his problem is or how he wants the issue resolved;" and that defendants provide him with a copy of all administrative remedy requests deemed abusive and a detailed description as to why each request was deemed abusive. *Id.* Defendants oppose Hughbanks's motion.

The South Dakota Department of Corrections' administrative remedy policy provides than an inmate's access to the administrative remedy procedure may be restricted if the administrative remedy coordinator and warden determine he is abusing the process. Docket 34-10. Warden Dooley and Associate Warden Susan Jacobs, the administrative remedy coordinator, determined that Hughbanks was abusing the administrative remedy process.[1] Docket 34, at ¶10. Therefore, his access to the procedure was restricted. *Id.* According to defendants, if Hughbanks would like his access to

---

[1] A review of the Notice of Rejection of Request for Administrative Remedy demonstrates that prison officials' determination Hughbanks was abusing the administrative remedy process was warranted. *See* Docket 34-11. Hughbanks submitted a complaint about puddles on the prison grounds after rain or snowfall. In his complaint, he argued that failure to fix the problem "to prevent the large puddles that stick around for more than a day shows deliberate indifference to the health and safety of inmates." *Id.* Hughbanks based this conclusion on the possibility that the puddles created a breeding ground for mosquitos. *Id.* His request was rejected because "the water absorbs into the ground within a day or two." *Id.* After this complaint, the warden and associate warden restricted his access to the administrative remedy process.

the administrative remedy procedure restored, he needs to submit a request to the warden. *Id.* They contend he has not done so. *Id.* Hughbanks disputes this contention. Docket 41.

### 1. Threat of Irreparable Harm

Hughbanks has not asserted that he faces the threat of irreparable harm, as required by *Dataphase*, if the court does not issue the requested injunction. *Dataphase*, 640 F.2d at 113. Defendants contend that Hughbanks may still submit complaints to the warden through kites or letters. Docket 33. Accordingly, Hughbanks has failed to meet his burden on the first prong of the *Dataphase* test. "The failure to show irreparable injury is, by itself, a sufficient ground upon which to deny a preliminary injunction, for the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987) (internal citations omitted). Despite Hughbanks's failure to demonstrate the threat of irreparable injury, the court will continue the *Dataphase* analysis.

### 2. Balance of Harm and Injury to Other Parties

Because Hughbanks has not demonstrated that he faces the threat of irreparable harm, the balance shifts in favor of defendants. Prison officials made a determination that Hughbanks was abusing the administrative remedy process. Issuing the injunctions Hughbanks seeks would interfere

with the day-to-day operations of the prison, harming defendants. It would also undermine the prison's ability to deal with abusive administrative remedy requests from inmates. Accordingly, this factor weighs against granting the injunction.

### 3. Likelihood of Success on the Merits

If Hughbanks brought a freestanding claim based on the denial of the administrative remedy process, he would be unlikely to prevail. This case is analogous to *Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993). In that case, a prisoner brought a § 1983 claim alleging prison officials refused to pick up and submit his completed grievance forms. *Id.* at 495. The district court dismissed his claim for failure to state a claim. *Id.* The Eighth Circuit affirmed, noting "no constitutional right was violated by defendants' failure, if any, to process all of the grievances he submitted for consideration." *Id.* The court explained that "a prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Id.* (citing *Azeez v. DeRobertis,* 568 F. Supp. 8 (N.D. Ill. 1982)). *See also Flick v. Alba*, 932 F.2d 728 (8th Cir. 1991). Thus, there is no constitutional right to utilize the prison grievance system. *Id.* In this case, prison officials made a considered determination that Hughbanks was abusing the administrative remedy process and pursuant to policy, restricted his access to the process.

As defendants point out, Hughbanks may still submit kites and letters to the warden. Consequently, Hughbanks is unlikely to prevail on the merits.

### 4. Public Interest

Because no constitutional right has been violated, there is no public interest in granting the injunction Hughbanks seeks. There is, however, a public interest in safeguarding the orderly administration of prisons. Prison officials are given "wide ranging deference to preserve internal order and discipline." *Norman v. Schuetzle*, 585 F.3d 1097, 1107 (8th Cir. 2009) (citing *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998)). If this court were to restrict prison officials' ability to address abusive inmate complaints, their ability to preserve internal order and discipline would be undermined. Accordingly, the public interest weighs against granting the injunction. Because Hughbanks has not demonstrated any of the *Dataphase* factors favor granting a preliminary injunction, his motion is denied.

### D. Retaliation

Hughbanks's final request for a preliminary injunction asks this court to order defendants to stop "all retaliatory practices." Docket 31. Hughbanks asserts he has been subjected to increased censorship,[2] has not been allowed to use his institutional savings account to purchase the same items

---

[2] These claims have been addressed in the section relating to the rejected and confiscated photographs.

he was allowed to purchase prior to filing this suit, and that he was improperly denied parole. *Id.*

### 1. Threat of Irreparable Harm

Hughbanks cannot establish that he will suffer irreparable harm if the defendants are not ordered to permit him to use his institutional savings account, rather than his commissary funds, to purchase religious food items. He was permitted to use his savings account funds instead of his commissary funds on one occasion due to an employee error. See Docket 40. Hughbanks still purchases religious food items with his commissary account funds. See Docket 40-3.

Nor has Hughbanks shown that he will be harmed if he must wait for his next scheduled parole hearing. He has not shown that having an earlier, court-ordered parole hearing will increase his chances of receiving parole. Accordingly, he will suffer no harm if the injunction does not issue.

### 2. Balance of Harm with Harm to Parties Litigant

Because Hughbanks has not demonstrated he will face irreparable harm, the harm defendants would face if an injunction were issued outweighs any ostensible injury to him. Hughbanks's request seeks special treatment; this is a concern for defendants who are tasked with the difficult task of running a prison. Furthermore, if this court were to order a new parole hearing, it would undermine the discretion of the Board of Pardons

and Paroles. Ordering a new parole hearing in this case would likely put the court in the position of continually ruling on requests for new parole hearings and requiring the state to respond. The harm to defendants outweighs any potential injury to Hughbanks.

### 3.  Likelihood of Success on the Merits

In order to prevail on his motion for a preliminary injunction, Hughbanks bears the burden of demonstrating a likelihood of success on the merits. To prevail on a retaliation claim Hughbanks would be required to demonstrate that: (1) he was engaged in constitutionally protected conduct; (2) an official took actions against him that would deter a similarly situated individual from exercising his constitutional rights; and (3) the official's retaliatory actions were motivated by Hughbanks's constitutionally-protected conduct. *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir. 2001). Hughbank's suit against defendants is constitutionally protected conduct. But he cannot satisfy the second element. The fact that Hughbanks was required to utilize his commissary account rather than his inmate savings account to purchase religious food items does not rise to the level of a constitutional violation. Thus, the officials' actions in requiring Hughbanks to follow the prison's financial policy would not deter a similarly situated individual from exercising his constitutional rights. Here, Hughbanks does not allege that he was not permitted to purchase religious food items.

Rather, he takes issue with which account he was permitted to use. Finally, Hughbanks cannot demonstrate that the prison employee's actions were motivated by his lawsuit. The employee in question was not even aware that Hughbanks had filed suit; nor were the named defendants involved in the decision. Docket 40, ¶ 9. Thus, Hughbanks has failed to satisfy the third element. *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (affirming dismissal of retaliation claim for failure to state a claim where inmate did not allege defendants were involved in or affected by his previous litigation). Accordingly, Hughbanks has not demonstrated a likelihood of success on his retaliation claim with respect to use of his inmate accounts.

Hughbanks also alleges defendants retaliated against him by denying him parole. But none of the named defendants are involved in the parole process. The Board of Pardons and Paroles is technically under the supervision of the Department of Corrections, but exercises its functions independently. *See* SDCL 24-13-3 ("The Board of Pardons and Paroles shall be administered under the direction and supervision of the Department of Corrections but shall retain the quasi-judicial, quasi-legislative, advisory and other nonadministrative functions . . . and shall exercise those functions independently[.]"). To be held liable for retaliation under § 1983, a prison official's involvement must be personal and direct. When there is no evidence of such involvement, an inmate's claim against that defendant must be

23

dismissed. *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995). Consequently, Hughbanks has failed to demonstrate a likelihood of success on the merits on the claim that defendants retaliated against him by denying him parole.

### 4. Public Interest

The final *Dataphase* factor examines whether the issuance of a preliminary injunction would serve the public interest. Issuing the injunctions Hughbanks seeks would be an unwarranted intervention into the running of the South Dakota prison system. Accordingly, the public interest would not be served by issuing him the relief he seeks. Because none of the *Dataphase* factors weigh in Hughbanks's favor, his motion for a preliminary injunction relating to retaliation by defendants is denied.

## II. Motion to Withdraw Motion for Ex Parte Injunction

Hughbanks filed a motion for ex parte injunction on July 28, 2010. Docket 9. On September 10, 2010, this court ordered him to serve his motion on defendants. Docket 25. Hughbanks has failed to do so. Accordingly, his motion for ex parte injunction is denied. His motion to withdraw his motion for ex parte injunction, therefore, is denied as moot.

## III. Motion for the Appointment of Counsel

For the reasons set forth in this court's September 10, 2010, order, Hughbanks's motion to appoint counsel is denied. Docket 25. Contrary to Hughbanks's assertions, neither the *Turner v. Safley* standard nor the

defendants' responses to his various motions for preliminary relief render his case more legally complex. Docket 38. Thus, his motion is denied. Accordingly, it is

ORDERED that Hughbanks's motions for preliminary injunctions (Docket 26, 29, 31) are denied.

IT IS FURTHER ORDERED that Hughbanks's motion for ex parte injunction (Docket 9) is denied.

IT IS FURTHER ORDERED that Hughbanks's motion to withdraw ex parte injunction (Docket 27) is denied as moot.

IT IS FURTHER ORDERED that Hughbanks's motion for the appointment of counsel (Docket 28) is denied.

Dated October 28, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE