UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| KEVIN L. HUGHBANKS, | ) | Civ. 10-4064-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER DENYING |
| ROBERT DOOLEY, Warden, Mike | ) | PRELIMINARY INJUNCTION |
| Durfee State Prison, a/k/a Bob | ) | AND DENYING APPOINTED |
| Dooley; | ) | COUNSEL |
| TIM REISCH, Cabinet Secretary, | ) | |
| SD DOC; | ) | |
| SUSAN JACOBS, Associate | ) | |
| Warden, Mike Durfee State Prison; | ) | |
| TAMI DEJONG, Unit Coordinator, | ) | |
| MDSP; | ) | |
| RANDY STEVENS, Sco. Property | ) | |
| Officer, MDSP; and | ) | |
| NICHOLE ST. PIERRE, Sco. | ) | |
| Property Officer, MDSP; | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Kevin L. Hughbanks, is incarcerated at Mike Durfee State

Prison in Springfield, South Dakota. He filed a pro se civil rights action under

42 U.S.C. § 1983 alleging, in addition to several other claims, that the South

Dakota Department of Corrections' (DOC's) correspondence policy prohibiting

the delivery of bulk-rate mail, in particular as applied to catalogs, is

unconstitutional. He now moves for preliminary relief and asks the court to

invalidate portions of the DOC's correspondence policy. Specifically,

Hughbanks seeks an order directing defendants to "stop using the rate/cost of postage on [an] item being received as a means of determining whether item is allowed or not." Docket 56 at 1. Hughbanks also asks this court to order prison officials to notify the sender or publisher "whenever correspondence, catalogs, or publications are confiscated/rejected as well as the reason for confiscation/rejection, giving the sender/publisher an opportunity to appeal as well as the intended recipient." *Id.* Thus, Hughbanks's motion asserts violations of his First Amendment rights and his procedural due process rights under the Fourteenth Amendment. Hughbanks also moves for the appointment of counsel to represent him in this action. Defendants oppose his motions.

## STANDARD OF REVIEW

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). Therefore, the party seeking preliminary relief bears the burden of establishing the elements necessary for relief. *Watkins, Inc. v. Lewis*, 346 F.3d 841, 833 (8th Cir. 2003). Whether a preliminary injunction should issue is decided by weighing four factors (the "*Dataphase*" factors). They are: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on the other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys. v. C L*

*Sys.*, 640 F.2d 109, 114 (8th Cir. 1981). No single factor is dispositive; rather, all of the factors must be considered to determine whether, on the balance, they weigh in favor of granting the injunction. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987). The Eighth Circuit has held, however, that "the two most critical factors for a district court to consider in determining whether to grant a preliminary injunction are: (1) the probability that plaintiff will succeed on the merits and (2) whether the plaintiff will suffer irreparable harm if an injunction is not granted." *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204, 206 (8th Cir. 1976). Moreover, in the prison setting, a request for a preliminary injunction "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

## DISCUSSION

### I.   First Amendment Claim: Bulk-Rate Mail

#### A.   Threat of Irreparable Harm

The "threshold inquiry" in determining whether a party is entitled to a preliminary injunction is "whether the movant has shown the threat of irreparable injury." *Glenwood Bridge Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991). While the court must consider all of the *Dataphase* factors,

3

"[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered[.]" 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995). Irreparable injury is harm that is "certain, great and of such imminence that there is a clear and present need for equitable relief." *Packard Elevator v. Interstate Commerce Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986).

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). *See Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140-41 (8th Cir. 1996) (finding the threat of irreparable harm requirement satisfied where movants alleged their exclusion from a particular public television program violated their First Amendment rights). Defendants concede that Hughbanks's mere allegation that his First Amendment rights have been violated by the denial of bulk-rate mail establishes the threat of irreparable harm. Thus, Hughbanks has established this element.

4

**B.      Balance Between Harm and Injury to Other Parties**

The second factor to consider is the balance of the threat of harm against
the harm that will occur to the other litigants. *Dataphase*, 640 F.2d at 113.
Defendants argue that any harm to Hughbanks is outweighed by the need to
accord deference to prison officials regarding the day-to-day operations of the
prison. Defendants also assert that the safety, security, and order of the prison
would be compromised by granting the relief Hughbanks seeks. Hughbanks's
primary argument is that classifying mail based on the postage rate is arbitrary.
He also states that the rejected catalogs are "not standard rate mail, my name
and customer number are specifically on the catalog and it specifies 'change
service requested' instead of 'or current resident.' " Docket 56 at 3. Hughbanks
argues that at one time, bulk-rate mail such as catalogs were handed out
"randomly to anyone requesting a catalog." Docket 75 at ¶ 6. Hughbanks also
points out that DOC policy already limits the amount of property an inmate may
possess in his cell. *Id.* at ¶ 12. According to Hughbanks, these facts invalidate
defendants' safety and security concerns.

There is a tension between the need to protect constitutional rights and
the longstanding policy of judicial restraint regarding issues of prison
administration. "Traditionally, federal courts have adopted a broad hands-off
attitude towards problems of prison administration." *Hosna v. Groose*, 80 F.3d
298, 304 (8th Cir. 1996). It is not the role of federal courts to micro-manage

5

state prisons. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995). Furthermore, "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment . . . such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life[.]" *Sandin v. Conner*, 515 U.S. 472, 483 (1995). Because the policy Hughbanks seeks to invalidate is a state-wide DOC policy, the court would be required to suspend it for all inmates in South Dakota at every single corrections facility in the state, not just at the Mike Durfee State Prison. This would compromise the safety and security of not just one institution, but of every institution in the state. Thus, the balance of the harm weighs in favor of defendants.

### C.    Likelihood of Success on the Merits

"In a First Amendment case . . . the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). To show a likelihood of success on the merits, a movant need not show "a greater than fifty percent likelihood that he will prevail on the merits." *Dataphase*, 640 F.2d at 113. Rather, "where the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." *Id.*

6

Defendants assert that Hughbanks has no First Amendment right to receive bulk-rate mail. They rely on *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130-33 (1977). In that case, the Supreme Court upheld a prison regulation that prohibited prisoners from receiving bulk-rate mail from a prison union. *Id.* North Carolina prohibited inmate solicitation of other inmates, meetings between members of the union, and bulk-rate mailings concerning the union from outside sources. *Id.* at 122. Prison officials had determined that the existence of the union could lead to work stoppages, mutinies, riots, and chaos. *Id.* at 127. The union sought to send boxes of pamphlets to inmates, using bulk-rate mail, and to have the inmates distribute the pamphlets among the prison population. *Id.* at 130-33.  Here, Hughbanks seeks to receive bulk-rate mail for his individual consumption; there is no indication that he intends to distribute the material he receives to other inmates. Thus, *Jones* is factually distinguishable and defendants' assertion that there is no First Amendment right to receive bulk-rate mail expands the *Jones* holding.

Defendants also cite *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) for the position that Hughbanks has no First Amendment right to receive bulk-rate mail. The *Smith* court held that a "complaint about undelivered catalogs fail[ed] to raise an issue of constitutional magnitude." *Id.* But the

7

Tenth Circuit Court of Appeals later distinguished the decision, noting the decision did not involve a challenge to a prison regulation or apply the *Turner* test. *See Jones v. Salt Lake Cnty.,* 503 F.3d 1147, 1159-60 (10th Cir. 2007). Rather, the decision was "limited to a prison official's one-time failure to deliver catalogs to an inmate." *Id.* Because the instant situation is factually distinguishable from *Jones* and *Smith*, this court assumes, without deciding, that Hughbanks has a First Amendment right to receive bulk-rate mail. Thus, the court will consider whether Hughbanks has demonstrated a likelihood of success on the merits of his claim.

Assuming that Hughbanks has a First Amendment right to receive bulk-rate mail, he does not lose it merely because he is incarcerated. *Procunier v. Martinez*, 416 U.S. 396, 408-10 (1974). Rather, he "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Leonard v. Nix*, 55 F.3d 370, 374 (8th Cir. 1995). These limitations "arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Therefore, an inmate's constitutional rights may be diminished by prison regulations that are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

8

A number of courts have upheld bans on bulk-rate mail and catalogs in prisons, finding they were reasonably related to legitimate penological interests such as the security of the prison, allocation of resources, and preventing fire hazards. *See Jones,* 503 F.3d at 1159-60 (noting that plaintiff likely had not met his burden of demonstrating that a county jail's catalog ban was unconstitutional, but remanding to district court for *Turner* analysis); *Sheets v. Moore*, 97 F.3d 164, 168 (6th Cir. 1996) (upholding a ban on bulk-rate mail); *Allen v. Deland*, 42 F.3d 1406 (10th Cir. 1994) (upholding prison policy banning catalogs); *Hrdlicka v. Cogbill*, No. 04-3020, 2006 WL 2560790 at *11 (N.D. Cal. Sept. 1, 2006) (upholding prison policy banning bulk-rate mail and prison officials' decision not to deliver magazine pursuant to that policy); *Dixon v. Kirby*, 210 F. Supp. 2d 792, 801 (S.D. W. Va. 2002) (upholding ban on bulk-rate mail and catalogs); *Allen v. Wood*, 970 F. Supp. 824, 829-30 (E.D. Wash. 1997) (upholding prison policy banning catalogs); *Alcala v. Calderon*, No. 95-3329, 1997 WL 446234 at *6 (N.D. Cal. July 24, 1997) (upholding prison ban on bulk-rate mail); *Kalasho v. Kapture*, 868 F. Supp. 882, 888 (E.D. Mich. 1994) (upholding prison policy banning the delivery of bulk-rate mail to inmates).

Hughbanks relies on contrary authority, which comes primarily from the Ninth Circuit Court of Appeals. *See Prison Legal News v. Lehman*, 397 F.3d

692,701 (9th Cir. 2005) (holding that prison ban on bulk-rate mail and catalogs violated the First Amendment); *Prison Legal News v. Cook*, 238 F.3d 1145, 1149-50 (9th Cir. 2001) (holding that prison regulation banning the receipt of subscription non-profit mail based on the postal service rate was not rationally related to a legitimate penological objective); *Morrison v. Hall*, 261 F.3d 896, 905 (9th Cir. 2001) (holding prison regulation banning bulk-rate mail was unconstitutional as applied to for-profit subscriptions publications); *Allen v. Higgins,* 902 F.2d 682, 684 (8th Cir. 1990) (holding prison official was not entitled to qualified immunity because he denied an inmate's request to mail a money order for a government catalog without examining the catalog); *Brooks v. Seiter*, 779 F.2d 1177, 1181 (6th Cir. 1985) (holding that an inmate's complaint that pamphlets, magazines, and catalogs were not delivered was not frivolous).[1] Because there is a split in authority and no controlling precedent from the Eighth Circuit, this court will independently analyze the constitutionality of the DOC's correspondence policy.

---

[1] Hughbanks also relies on *Williams v. Brimeyer*, 116 F.3d 351, 354 (8th Cir. 1997). In *Williams*, the Eighth Circuit Court of Appeals held that a prison's blanket ban on materials from the Church of Jesus Christ Christian violated the First Amendment. *Id.* But in that case, the inmate was claiming the ban violated his rights under the Free Exercise clause, not his First Amendment right to receive information. *Id.* Thus, the precedential value of the decision in the instant case is limited.

Four factors are relevant in determining whether a challenged regulation is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89-90. The first factor examines whether the regulation is legitimate and neutral and rationally related to the underlying government objective. *Id.*  Second, the court must examine whether the prisoners have an alternative means of exercising the right. *Id.* at 90. Third, the court must examine the impact accommodation will have on guards and other inmates and other allocation of prison resources generally. *Id.* The fourth factor is the absence of ready alternatives. *Id.*

### 1. Neutral and Rationally Related to the Underlying Objective

Defendants assert that the South Dakota Department of Corrections' correspondence policy is constitutional. The policy provides that "free advertising materials, fliers, non-subscriptive third class/bulk-rate mail, non-subscriptive or free catalogs or pamphlets will normally not be delivered to offenders." Docket 61-1 at 2. The policy bans all non-subscriptive third class/bulk-rate mail and all non-subscriptive or free catalogs. Thus, it is content neutral. Hughbanks does not dispute the neutrality of the policy.

Defendants assert that the policy exists to manage prison resources and preserve the safety of the institution. "One danger of granting Hughbanks's request for preliminary relief is that the safety, security, and order of the prison

11

would be compromised." Docket 67 at 4. Preventing contraband from entering the prison, fire safety, and allocating mailroom staff are the objectives behind this policy. "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights" of prisoners. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). "Such considerations are peculiarly within the province and professional experience of corrections officials, and, in the absence of substantial evidence in the record that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S. 817, 827 (1974). Thus, there is a legitimate government objective underlying the policy.

Hughbanks contends that prohibiting inmates "from receiving mail based on the postage rate at which the mail was sent is an arbitrary means" of achieving these goals. Docket 75 at 4. According to Hughbanks, "it is irrational to prohibit prisoners from receiving bulk-rate mail and catalogs on the theory that it reduces fire hazards because the DOC already regulates the quantity of possessions that prisoners may have in their cell." *Id.* (citing *Lehman*, 397 F.3d at 700). Even if that were true, Hughbanks has not addressed defendants' other rationales for prohibiting bulk-rate mail, namely security and order. Thus, despite the split in authority, Hughbanks is unlikely to be able to

demonstrate that the DOC's correspondence policy is not rationally related to at least one legitimate penological purpose.

### 2.    Alternative Means of Exercising the Right

The next factor is whether there is an alternative means available to exercise the asserted right. *Turner*, 482 U.S. at 90. Defendants assert that inmates at Mike Durfee State Prison have alternative means of exercising their First Amendment rights. Inmates may review catalogs in the prison property office and the prison has a library that inmates may access. Docket 59 at 17. Hughbanks does not dispute this contention or address this factor of the *Turner* test. Moreover, this court notes that inmates may pre-pay the postage on any catalog and have it mailed first or second class. *See Kalashno*, 868 F. Supp. at 887. Because the application of the policy allows a broad range of materials to be sent, received, and read, this prong of the *Turner* test is satisfied. *Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989). Therefore, the court finds, at least for the purposes of determining whether preliminary relief is warranted, that alternative means of exercising the right exist.

### 3.    Impact of Accommodation

The next factor to consider in assessing the DOC's correspondence policy is the impact of requiring the delivery of bulk-rate mail to inmates. Thus, this court must consider the impact on "guards and other inmates and prison

resources generally" if Hughbanks's proposal is adopted. *Turner*, 482 U.S. at 90. Defendants assert that permitting bulk-rate mail to be delivered would present safety and security concerns and would limit prison resources. In addition to processing the increased volume of mail, prison employees would have to individually review it for contraband before delivery. Docket 59 at 17. Moreover, because the challenged policy is a state DOC policy, any changes ordered to the policy would have to be made in every correctional institution in South Dakota, not just Mike Durfee State Prison. Hughbanks asserts that defendants could "easily make a database that unit staff can update and mailroom/property office would have quick access to that lists what material inmate is requesting so defendants will have knowledge of what an inmate has requested when material comes in." Docket 75 at 8. But this would require every facility in the state to develop such a database, train staff on its use, and maintain it. "When the accommodation of an asserted right will have a significant ripple effect on fellow inmates or prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90. Because the policy Hughbanks challenges is statewide, his suggested accommodation would have a significant effect on South Dakota inmates and prison staff. Thus, at least at this stage of the litigation, this court will defer to prison officials' discretion.

### 4.     Absence of Ready Alternatives

The final factor to be considered is whether there are alternatives to the existing policy that "fully accommodate the prisoner's rights at de minimis cost to valid penological interest." *Id.* at 91. "The absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable. . . ." *Id.* The purpose of this factor is to ensure that a regulation is not an "exaggerated response" to legitimate concerns. *Sheets*, 97 F.3d at 169. It appears that Hughbanks will not be able to demonstrate that the DOC's ban on bulk-rate mail is an exaggerated response to security and order concerns. Therefore, it appears that Hughbanks has not demonstrated he is likely to succeed on the merits of his claim.

### D.     Public Interest

"[T]he determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to protect constitutional rights." *Phelps-Roper*, 545 F.3d at 690. This fact, coupled with the public policy of deferring to prison officials in matters of prison administration, demonstrates that the public interest would not be served if this

court issued the injunctions Hughbanks seeks. Therefore, Hughbanks is not entitled to preliminary relief on his First Amendment claim.

## II.   Procedural Due Process: Rejection Notices to Inmate and Sender

Hughbanks also argues that when bulk-rate mail, such as a catalog, is not delivered, a rejection notice should be given to both the inmate and the publisher or sender. He asks this court to require Mike Durfee State Prison to "notify the intended recipient and the sender/publisher (as appropriate) whenever correspondence, catalogs, or publications are confiscated/rejected as well as the reason for confiscation/rejection giving the sender/publisher an opportunity to appeal as well as the intended recipient." Docket 56 at 1. Hughbanks seeks a preliminary injunction on this claim as well. Thus, the *Dataphase* factors apply to this claim.

### A.    Threat of Irreparable Harm

The first factor that Hughbanks must establish is the threat of irreparable harm. *Dataphase*, 640 F.2d at 113. Hughbanks's allegation that his due process rights are being violated by the current notice policy is sufficient to establish a threat of irreparable harm. *See* 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, *Federal Practice & Procedure* § 2948.1 (2d ed. 1995) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.");

16

*Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (holding that a deprivation of a constitutional right is an irreparable injury). *Cf. Marcus*, 97 F.3d at 1140 (holding that allegation that First Amendment rights were violated was sufficient to establish the threat of irreparable harm). Thus, Hughbanks has satisfied the first prong of the *Dataphase* inquiry.

**B.    Balance of Harm**

The next factor is the balance of the threat of harm versus the harm that the other parties will suffer if a preliminary injunction issues. *Dataphase*, 640 F.2d at 113. Defendants assert that the DOC would be required to expend substantial prison resources if it were required to implement a policy requiring notice to publishers. Docket 59. They also assert that requiring the prison to provide notice to both the inmate and sender every time a piece of third class/bulk-rate mail is rejected or destroyed would "eliminate the purpose of the policy disallowing third class/bulk-rate mail, which is to preserve prison resources and ultimately preserve security and order within the prison." *Id.* Given the federal courts' longstanding policy of deferring to the judgment of prison administrators, it appears that these concerns outweigh any harm Hughbanks will suffer if he does not receive preliminary relief.

17

### C.    Likelihood of Success on the Merits

The next factor to be considered is the likelihood of success on the

merits. *Dataphase*, 640 F.2d at 113. Due process guarantees apply only when a

constitutionally protected liberty or property interest is at stake. *Bd. of Regents

v. Roth*, 408 U.S. 564, 569 (1972). In order for Hughbanks to successfully

argue that his due process rights are violated by the current policy, he must

first establish that he has a protected First Amendment interest in receiving

the rejected catalogs. *See, e.g., Kalasho*, 868 F. Supp. at 889.

This court has assumed, without deciding, that Hughbanks has a First

Amendment right to receive bulk-rate mail. *See supra* Part I.C. While the

United States Supreme Court has upheld a policy ordering prisons to provide

rejection notices to both inmates and senders of personal correspondence,

*Procunier*, 416 U.S. at 418, subsequent Supreme Court case law holds that

regulations governing mail to prisoners must be analyzed under the more

deferential standard set forth in *Turner v. Safley*. *See Thornburgh*, 490 U.S. at

413 (holding that correspondence entering a prison must be analyzed under

the *Turner* reasonableness standard, rather than the stricter test set forth in

*Procunier*). Therefore, the current notice policy will be upheld if it is "reasonably

related to legitimate penological interests." *Turner*, 482 U.S. at 87.

### 1.  Neutral and Rationally Related to Underlying Objective

The court must first examine whether the current policy is neutral and rationally related to the underlying government objective. *Turner*, 482 U.S. at 89-90. The current policy is neutral, in that it bans the delivery of bulk-rate mail outright and does not provide for a notice of its rejection to the inmate or the sender. Thus, the regulation classifies mail on the basis of its postal category rather than its content. Moreover, Hughbanks is unlikely to be able to demonstrate that the current policy is not rationally related to the underlying objective of the policy, which is to conserve prison resources and preserve security and order within the prison. *See* Docket 59.

### 2.  Alternative Means of Exercising the Right

The second factor is whether an alternative means of exercising the right exists. *Turner*, 482 U.S. at 90. The current correspondence policy provides for an alternative means of exercising Hughbanks's asserted right to notification for refused bulk-rate mail. If Hughbanks prepaid the postage and had the materials he seeks mailed first class, he would receive a rejection notice if it were deemed undeliverable. *See* Docket 61-1, Offender Correspondence Policy. *See also Alcala*, 1997 WL 446234 at *6 (noting that plaintiff had an alternative means of exercising his asserted right to notification because the challenged policy permitted him to prepay the postage on items that would normally be

sent third class and prison policy provided for rejection notices for items mailed first class).

### 3. Impact of Accommodation

The impact of accommodating the asserted right is the third factor. *Turner*, 482 U.S. at 90. Thus, the court must examine the impact on guards, other inmates, and prison resources generally. *Id.* As noted earlier, the challenged policy is a state-wide DOC policy. It therefore applies to all corrections institutions in the state of South Dakota, not just Mike Durfee State Prison where Hughbanks is housed. Defendants argue that substantial resources would be required to provide rejection notices to the recipients and senders of bulk-rate mail. Docket 59. The court agrees that substantial resources would be expended to provide the requested rejection notices.

### 4. Absence of Ready Alternatives

The final factor in the reasonableness analysis is the absence of ready alternatives. *Turner*, 482 U.S. at 90. Hughbanks has not identified any alternative that fully accommodates his asserted right to notification at de minimis cost to prison security. Thus, it appears likely that Hughbanks will be unable to demonstrate that the current notification policy is not reasonably related to the legitimate penological interests of preserving limited prison

resources and protecting the security and safety of the institution. Therefore, Hughbanks is unlikely to succeed on the merits of his claims.

### D.    Public Interest

The final factor in the *Dataphase* analysis is whether the public interest would be served by the issuance of a preliminary injunction. *Dataphase*, 640 F.2d at 113. "Determination of where the public interest lies . . . is dependent on the likelihood of success on the merits . . . because it is always in the public interest to protect constitutional rights." *Phelps-Roper*, 545 F.3d at 690. Hughbanks has not demonstrated a likelihood of success on the merits. This fact, coupled with the public policy of deferring to prison officials in matters of prison administration, demonstrates that the public interest would not be served if this court issued the injunction Hughbanks seeks. Thus, Hughbanks is not entitled to preliminary relief on his procedural due process claim.

## III.   Motion for Appointment of Counsel

Hughbanks also moves for court-appointed counsel. Docket 77-79. A civil litigant has no constitutional or statutory right to a court-appointed attorney. *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995). Determining whether to appoint counsel to represent indigent civil litigants is a matter of the court's discretion. *Id.*

Hughbanks relies on *Abdullah v. Gunter*, 949 F.2d 1032 (8th Cir. 1991),
asserting he is entitled to counsel because his claim has not been alleged to be
frivolous and because he has attempted to retain private counsel and failed.
But these two factors do not entitle a pro se litigant to appointed counsel.
Rather, they are threshold inquiries that a court must make before it assesses
whether "the plaintiff as well as the court will benefit from the assistance of
counsel." *Abdullah*, 949 F.2d at 1035. "[O]nce the court is satisfied that
plaintiff has alleged a valid prima facie claim, then further inquiry should be
made as to need. The court should satisfy itself that plaintiff has in good faith
attempted to retain counsel and been unsuccessful." *Id.* (quoting *Nelson v.
Redfield Lithograph Printing*, 728 F.2d 1003 (8th Cir. 1984)).

In analyzing a motion for appointed counsel, the court must evaluate the
legal and factual complexity of the case, the presence or absence of conflicting
testimony, and the plaintiff's ability to investigate the facts and present his
claim. *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996). Hughbanks argues that
the case is both legally and factually complex. He states "the sheer number of
claims and defendants makes this a factually complex case." Docket 79 at 3.
But Hughbanks has *chosen* to pursue these claims against these defendants in
a single action. Because "a plaintiff is the master of his complaint," *BP Chem.
Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 685 (8th Cir. 2002), the number of

defendants and claims is within Hughbanks's control. Moreover, the claim is not factually complex. The only facts that appear to be in conflict relate to Hughbanks's Eighth Amendment claim and statements allegedly made by defendant Randy Stevens. Otherwise, Hughbanks challenges the application of prison and DOC policies to him and facially attacks the inmate correspondence policy banning the delivery of bulk-rate mail to inmates. The materials Hughbanks has filed in support of his motion for a preliminary injunction demonstrate this fact.

Hughbanks also relies on his Eighth Amendment claim to assert that there is conflicting testimony.  Specifically, he states that "the plaintiff's account of his taunting and being threatened by Stevens is squarely in conflict with the statements of the defendants." Docket 79 at 4. "This aspect of the case will be a credibility contest between the defendants and the plaintiff." *Id.* But this is not necessarily true. Defendants have moved for summary judgment; if summary judgment is granted, it will be because the court finds there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. If summary judgment is granted, such credibility determinations will be unnecessary. Hughbanks has been granted an extension of time to respond to defendants' motion for summary judgment. *See* Docket 74, Order Granting Extension of Time. Thus, his concerns about credibility determinations are premature.

The final factor to be evaluated is the plaintiff's ability to investigate the facts and present his claim. *Davis*, 94 F.3d at 447. Hughbanks states "a lot of materials that the plaintiff needs to investigate are not allowed to him because they are private documents, material that is not allowed into the possession of the plaintiff ("Dirty Spanish" and "The Quotable Bitch"), are part of personnel files or other inmate's complaints, or they are being filed under seal where plaintiff cannot review." Docket 79 at 4. But Hughbanks is not prevented from effectively arguing his claims by defendants' refusal to provide him with books confiscated under prison policy; defendants' motion for summary judgment and motion for in camera review provide Hughbanks with an explanation of why the materials were confiscated and sufficient information for him to challenge the confiscation. Hughbanks argues he is unable to effectively present his claim because he lacks legal training. But the number and content of the motions he has filed in this case belie that claim. Hughbanks has demonstrated an ability to research the legal basis of his claims, present arguments in support of them, and effectively respond to defendants' arguments. His filings are clear and cite relevant precedent. Thus, the appointment of counsel would not be beneficial to both the court and Hughbanks at this time. Therefore, his motion to appoint counsel is denied without prejudice to refiling if his claims survive summary judgment.

**CONCLUSION**

Hughbanks has failed to meet his burden under *Dataphase* to show that a preliminary injunction should issue on his First Amendment and due process claims relating to the ban on bulk-rate mail and failure to provide rejection notices when bulk-rate mail is rejected. Nor has Hughbanks demonstrated that the appointment of counsel would benefit both the court and him at this time. Therefore, it is

ORDERED that Hughbanks's motion for a preliminary injunction (Docket 56) is denied.

IT IS FURTHER ORDERED that Hughbanks's motion for appointed counsel (Docket 77) is denied without prejudice to refiling if his claims survive summary judgment.

Dated March 19, 2011.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE